ISAAC TRULLINGER, Appellant, v. FREMONT COUNTY, Iowa, Appellee.

No. 43859.

MAY 4, 1937.

REHEARING DENIED DECEMBER 17, 1937.

678

Genung & Genung, for appellant.

Miller, Miller & Miller, for appellee.

SAGER, J.—The difficulty we have had in reaching what seems to us to be the right application of legal principles to the cause before us has been out of all proportion to the ease with which the question may be stated. Here it is: Is the appellant entitled to workmen's compensation on a record the facts of which are substantially as follows?

We purposely omit reference to the corporate capacity of the appellee, the powers of its board of supervisors and their control of the affairs of the county in this branch of public activity. There was no dispute on this point.

Appellant from some time in April, 1934, was a member of the road department of the appellee county. Because of the drought during 1934 he had not worked all the time, and was not guaranteed steady time. He was employed to operate a tractor, at a fixed rate per hour, during certain hours of the day. His work was to drive a tractor for road grading and maintenance, working under one Reavis, an employee of the county, who was in charge of the equipment and acting as foreman over the appellant. Reavis received his orders from the board. In the course of the road work appellant operated the tractor and Reavis operated the blade. In the summer of 1934, road work having been discontinued because of the drought, an arrangement was made by the board under which trench silos were to be dug and were dug for different farmers in the county. Under this arrangement the farmers were to pay the county the wages of the men employed and the cost of the gas and oil for the operation of the tractor, and nothing for the use of the tractor itself. The purpose of this arrangement was both to keep the men at work, so far as possible, and to help the farmers. Appellant had assisted in digging ten or eleven of these silos,

among them one for one Martin. This was done at the direction of the county engineer. Before going to work for Martin, the county engineer, being asked by appellant if it was necessary for him to wait until the end of the month for his pay, answered that it would be all right to collect the money from Martin, and Martin paid him, as did one Gee. This arrangement was made on orders of Reavis, appellant's immediate superior.

On October 10, 1934, Reavis directed appellant to go to the farm of Raymond and dig a trench silo there. Nothing was said in advance as to how appellant was to be paid, and he expected to wait until the end of the month for his money. Following instructions of Reavis, appellant undertook on the next day, by the use of the county tractor, to dig the trench; and while so doing sustained grievous injuries, incurring large expense for medical service and hospitalization. The trench silos which appellant was engaged in excavating as above stated averaged from 50 to 200 feet in length, were about 12 feet at the top, 8 feet at the bottom, and 8 to 10 feet deep. In their use by the farmers ensilage is placed in them, packed down and covered with straw and dirt, for the purpose of preserving it. It should be added that with the arrangement between the county board and the various farmers for the digging of silos appellant had no connection. He did not come in contact with the farmers in any way save as he performed work on their lands, nor was he to receive any wages or compensation from them. The statement above made with reference to Martin and Gee having paid the appellant directly was objected to by the appellant on the ground that same was immaterial, but the merits of this objection we do not stop to consider.

An excursion in foreign jurisdictions on the question involved has persuaded us that there is much confusion and conflict in the decisions on the workmen's compensation law as applied to analogous circumstances. This conflict arises in part from the difference in wording of the statutes, and partly from the difference in which the matter was looked at by the courts of last resort. A large number of cases decided by the different states, under varying conditions under which the question arose, will be found gathered together in these citations: Notes to 7 A. L. R. 1296; 13 A. L. R. 955; 35 A. L. R. 208; 43 A. L. R. 954; supplemental decisions in 1936 A. L. R. Blue Book; and pocket supplement to the volume last named.

That this court has had its difficulties with the same question is apparent from Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805, 33 A. L. R. 1433, with its dissenting opinion. To this we shall have occasion to refer again.

While we have had before us on a number of occasions questions touching the workmen's compensation law, there are only three which seem to have such directness of bearing as to call for examination herein. One is the Oliphant case, already referred to; and the others are Sylcord v. Horn, 179 Iowa 936, 944, 162 N. W. 249, 252, 7 A. L. R. 1285, and Taverner v. Anderson, 220 Iowa 151, 261 N. W. 610, 611.

Before proceeding to an examination of the cases, we quote paragraph 3, section 1361 of the Code of 1935: As listed among those exempted from the operation of the law:

"Persons engaged in agriculture, in so far as injuries shall be incurred by employees while engaged in agricultural pursuits or any operations immediately connected therewith, whether on or off the premises of the employer."

It will be noticed that, according to this language, those persons engaged in *"agricultural pursuits* or any operations *immediately connected therewith,* whether on or off the premises of the *employer"* (italics ours), are exempted from the operation of the law; or, to state it in the language of the Code itself, "this chapter shall not apply to:" among others, the class of persons mentioned and described in the above-quoted paragraph 3.

A reading of this section indicates that the question before us is, Was appellant engaged in agricultural pursuits or any operation immediately connected therewith?

Another question which arises in the mind of the writer is this: Does the word "employer" mean only the person who hires and pays the workman, or is it comprehensive enough to include anyone within the purview of the statute, without reference to the question who the employer actually is? While this thought is inherent in and incidental to what follows, we do not feel it necessary to decide the question, and we do not do so.

The Sylcord case, supra, was one in which the defendant was the owner of a corn shredder and appurtenances belonging thereto, and was engaged as an independent contractor in the business of operating said corn shredding machine for profit.

Plaintiff, in the employ of the defendant, while operating this shredder on the farm of one Swaney, sustained the injuries for which he made claim. The case turns upon a matter of pleading, but this court was called on to express its views on the general principles involved. After discussing matters which we need not go into now, the opinion says:

"This brings us to the other question relied upon,—and really the only question in the case,—and that is whether plaintiff was a 'farm or other laborer engaged in agricultural pursuits.' If so, he is within the exception contained in Sec. 2477-m, Code Supp., 1913, and not within the Compensation Act. It seems to us it is hardly a debatable question. No authorities are cited by either party on this point. The petition alleges that, at the time of his injury, he was engaged as an engineer and laborer in defendant's employ, operating a piece of farm machinery, a corn shredder. In 2 Corpus Juris 982, and Century Dictionary, we find this definition of agricultural: 'Pertaining to, connected with, or engaged in agriculture.' We also find, at page 988, 2 Corpus Juris, that 'the term agriculture has been defined to be the art or science of cultivating the ground, especially in fields or large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding and management of live stock; tillage, husbandry, and farming.' "

The opinion continues with an examination of other authorities which we do not find it necessary to examine now.

Section 2477-m referred to in that case is somewhat different in its language from the present statute. It provides, among other things:

"* * * but this act shall not apply to any household or domestic servant, farm or other laborer engaged in agricultural pursuits, nor persons whose employment is of a casual nature."

After a discussion of the authority as cited, the court continues:

"There can be no doubt that shredding corn is a part of carrying on a farm. Swaney could have employed defendant to plow a 40-acre field, and defendant could have employed plaintiff to assist him. The fact that defendant may have agreed to

plow the entire field by contract would not change the character of the work, and both he and his assistant would still be engaged in farming operations.

"It is our conclusion that, under the allegations of the petition as it now stands, plaintiff has not brought himself within the Compensation Act, but that he is a farm laborer or other laborer engaged in agricultural pursuits, and within the exception of Sec. 2477-m."

In another part of the opinion (p. 943) we used this language:

"We think that, under the circumstances of this case, it is not material that, as between the defendant and Swaney, defendant was an independent contractor. If defendant was seeking to recover from Swaney, then the question might be material as bearing on the question as to whether, being an independent contractor, he was a laborer or employee. Or, if plaintiff was seeking to recover from Swaney, the question as to whether defendant, Horn, was an independent contractor might be material on the question as to whether plaintiff was an employee of Swaney's."

This question suggests the thought in the mind of the writer as above indicated, that it may be important in a proper case to inquire who is meant by the "employer."

In the case before us appellant had nothing to do with the farmers; received no directions from them; was at all times an employee of the county, and was taking orders and receiving pay from the county except in the two instances referred to when payment was made by Martin and Gee. The difference between the operations conducted in the Sylcord case and the one before us are apparent. In the Sylcord case the claimant was operating an instrumentality whose sole and only purpose was to perform a farming operation of the highest importance to agriculture, particularly that branch which has to do with the feeding of horses and cattle. It has and can have no other use; and while injured in its operation claimant was doing work which was immediately connected with agricultural pursuits. This opinion seems to the writer to have been an extreme one and he would have preferred a different result, because of the question suggested above and passed without decision.

This claimant was not an employee of the farmer; nor was he doing work which, by fair and reasonable construction, would exempt him from the operation of the law.

In the case at bar we find the appellant operating heavy machinery, not designed for nor intended to be used for any other purpose than the construction and maintenance of highways. It is true that the nature of this machinery made it serviceable in excavating and removing earth in places other than upon the highways; and because of this character it was found usable in digging these pit or trench silos. But, unless we are prepared to hold, as we are not, that the statute means that every operation of whatever kind which facilitates or assists in the operation of a farm is an agricultural pursuit, we must hold that the appellant was not within the exception of paragraph 3 of section 1361 of the Code.

Our views are so aptly expressed in Guse v. Wessels et al., 270 N. W. 665, 666, decided on January 5, 1937, by the supreme court of Nebraska, that we quote at some length:

"The Minnesota court aptly states the rule in the following language: 'A workman is not a farm laborer simply because at the moment he is doing work on a farm; nor because the task on which he is engaged happens to be what is ordinarily considered farm labor. The employee of an implement dealer does not become a farm laborer while engaged in correcting the behavior of a self-binder in the grain field of the owner, a farmer and customer of the dealer. Nor would the employee of a well digger become a farm laborer while stabling horses used on the drilling outfit. But a farmer's hired man would not cease to be a farm laborer while adjusting harvesting machinery or stabling the horses of a contractor drilling a well on the place. The modern farm laborer doubtless does much work on the rapidly increasing electrical equipment on farms. He continues a farm laborer while he does it. But an electrician sent out from town to do the same thing would not become a farm laborer for the occasion. So also a farm laborer does not step out of his own part while doing carpenter work for his farmer employer in the repair of farm buildings. Neither does the carpenter who comes onto the farm for the job of carpentry and nothing more. One continues a farm laborer and the other does not become one.' Peterson v. Farmers' State Bank, 180 Minn. 40, 230 N. W. 124."

The case of Taverner v. Anderson, supra, is one in which the employee of a farmer was injured in the operation of a sorghum mill, which was being used to crush the cane from the juices of which sorghum is made. The plaintiff in that case assisted in cutting the cane and hauling it from the field, and had done other work as a farm hand although it was conceded that he had not much experience in that line of work. Following the Sylcord case, we there held that one engaged as was Taverner comes within the definition of one "engaged in agricultural pursuits." We then said:

"In the case of Sylcord v. Horn, 179 Iowa 936, 162 N. W. 249, 7 A. L. R. 1285, we find that Horn was the owner of a cornshredding machine. He went from farm to farm as called for service. The claimant in that case was in his employ as a helper. Yet this court held because the statute (Code Supp. 1913, section 2477-m) provided the compensation act did not apply to those employing 'farm or other laborer engaged in agricultural pursuits,' that the employee did not come within the compensation act. In the case at bar, the claim seems much further removed than in the case of Sylcord, whose employer was not a farmer, while Anderson is just that and nothing else. Claimant was much more of a farm hand than was Sylcord, who had nothing whatever to do, in a proprietary sense, with farm operations. The contention that Anderson was making sorghum to sell, in part is true of all other operations upon the farm. The farmer gets his living by selling the fruits of his farm operations, in the production of which he must call-to his aid sorghum mills as well as other farm equipment.

"Since the Sylcord case was decided, the legislature has amended the workmen's compensation act. At that time there was no reference in the law to such exclusions except the simple phrase, 'farm or other laborer engaged in agricultural pursuits.' At the present time the law reads:

" 'Persons engaged in agriculture, in so far as injuries shall be incurred by employees while engaged in agricultural pursuits or any operations immediately connected therewith, whether on or off the premises of the employer.' "

While not strictly in point, because it turned upon a different state of facts, we find the case of Oliphant v. Hawkinson, supra, instructive and enlightening. This is a case in which the

claimant was a carpenter, engaged in building a corn crib on a leased farm under the control of the farmer; and he was denied recovery because his work was "purely casual employment" within the meaning of sections 2477-m and 2477-m16, Code Supp. 1913. The opinion and dissent in the Oliphant case are not only instructive but so highly entertaining that we were prompted to quote therefrom, but refrain from so doing because this opinion is already of sufficient length. We leave the reading of that case to such of the profession as may be interested.

From the whole record it is our conclusion that appellant herein was not engaged in an "agricultural pursuit or one immediately connected therewith" in such sense as to bring him within the exemptions of Code section 1361, and that he is entitled to compensation under the workman's compensation law. This conclusion being contrary to that reached by the trial court we are under the necessity of reversing and remanding the case, with instructions to the trial court to enter its judgment in accordance herewith, fixing such compensation as is provided by the statute, in the light of the record.—Reversed and remanded with instructions.

RICHARDS, C. J., ANDERSON, PARSONS, KINTZINGER, DONEGAN, MITCHELL, STIGER, JJ., concur.