JOHN P. SHEAHAN, administrator of estate of Herman Kleeman, deceased, appellee, v. DALLAS PLAGGE, appellant.

No. 50633.

(Reported in 121 N.W.2d 120)

APRIL 9, 1963.

REHEARING DENIED JUNE 11, 1963.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant.

Hobson & Cady, of Hampton, and Carl Foster, of Sheffield, for appellee.

THORNTON, J.—I. Defendant states the question on appeal thus: "Whether or not Section 85.1(3), Code of Iowa (1958) bars the right of the plaintiff to recover damages."

■ This is a common-law action between the legal representative of an employee and his employer for damages for a fatal injury received while working under the direction of the employer. If the decedent is not specifically excluded from workmen's compensation plaintiff cannot recover. Groves v. Donohue, 254 Iowa 412, 419, 118 N.W.2d 65, 69.

The applicable Code section is:

"85.1  To whom not applicable. This chapter shall not apply to: * * *

"3. Persons engaged in agriculture, insofar as injuries shall be incurred by employees while engaged in agricultural pursuits or any operations immediately connected therewith, whether on or off the premises of the employer, * * *."

Subsection 3 further provides employers solely engaged in agriculture and those engaged in agriculture and also engaged in any other trade or business may elect to come under the Act.

■ For a person to be excluded from compensation under the above section two things must be present, 1, he must be engaged in agriculture, and 2, he must be injured while engaged in an agricultural pursuit or any operation immediately connected therewith. Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 100 N.W.2d 115; and 32 Iowa Law Review 1, 7. See also Criger v. Mustaba Investment Co., 224 Iowa 1111, 276 N.W. 788; Trullinger v. Fremont County, 223 Iowa 677, 273 N.W. 124; and Taverner v. Anderson, 220 Iowa 151, 261 N.W. 610.

Defendant assigns four errors for reversal. He combines them all for argument as they relate to the one proposition as above stated. In the course of his argument he restates the question for decision: "The real issue here is whether his right to compensation depends on his general employment or what he was doing on one isolated occasion. * * * Is an employee barred from recovering compensation because on one isolated occasion he is engaged in an 'agricultural pursuit' at the time he is injured."

· In his statement of the question on review, we believe defendant has overlooked that both employees and employers may have more than one occupation.

■ II. The evidence is clear, defendant-employer had two occupations, sand and gravel and farming; decedent was an employee of defendant in one or both of the occupations of defendant and decedent lost his life in an agricultural pursuit. Defendant operated two separate and distinct enterprises. He operated a sand and gravel business, he also farmed 164 acres. He testified he has farmed since 1955, and "This [1961] is my third year in the sand and gravel business." Defendant has two gravel pits located adjacent to a 54-acre cornfield. The corn ground is light soil and defendant irrigates it to get better production.

Defendant testified decedent went to work for him at the gravel pit in April 1959. Decedent was employed to work in the gravel pit. Defendant maintained two separate checking accounts, one for the sand and gravel business, one for farming. Decedent was paid from the sand and gravel account. Decedent's duties were to load and weigh gravel and answer the phone at the gravel pit. Defendant further testified:

"There was enough work at the pit to keep Mr. Kleeman [decedent] busy all day. * * * Mr. Kleeman was hired to work at the pit. That is where he did work. He spent all of this time at the pit."

Concerning the work at the time decedent was killed, defendant testified he had a farm tractor, one not used at the pit, for moving the spraying machine. He picked up another man, Keith Rader, to help with the irrigating. They were going to move the machine themselves.

"However, Herman [decedent] stood at the pit and said 'Do you want me to help?' and I said 'Yes, if you want to drive the tractor you can go ahead' and we all went out there. If Mr. Kleeman hadn't gone along, he would have left the pit and gone home since it was five o'clock."

At the end of the field defendant took over the operation of the tractor and in turning one of the booms on the machine came in contact with the electric line electrocuting decedent.

Concerning the operation and decedent's work, defendant testified:

186

"The moving of the machine was under my direction. I was the boss. Mr. Kleeman had never helped me move the boom that I know of but he may have helped me pick up a few pipes now and then but it was rare if he did. I don't remember if he ever did. He may have or may not. He had never helped move the trailer before. He had never guided the back end of the trailer before."

In its findings and judgment the trial court stated:

"Whether the defendant was at the time engaged in agricultural pursuit or was engaged as the operator of the gravel and sand pit is one of the questions to be answered by this court.

"VII. It is a well-recognized rule of law that a person may be actually engaged in more than one pursuit at the same time. The real test is as to which one was he actually performing at the very time in question.

"The court has no doubt but what the defendant and his employee had ceased the gravel pit operation when he entered the field where the irrigation machine was located. There was no relation as to the operation of the gravel pit involved when the tractor was hitched to the irrigating machine. The field was owned and operated by the defendant as farm land and the defendant was then purely engaged in agricultural pursuit.

"The fact that the decedent was not being actually paid for extra work or activity did not dissolve the relationship of the parties as employer and employee. The decedent was actually responding to the directions of the defendant as his employer at the time in agricultural pursuit and how he was to be paid, if at all, is inconsequential. * * *

"The employer in this case in each instance was the same whether at the gravel pit or on the farm."

And the court entered judgment for the plaintiff.

Defendant argues these findings are not supported by the evidence. Also that the trial court was applying the moment-of-injury rule. We believe it is apparent the testimony of defendant supports the findings. The court found both decedent and defendant had ceased working at the gravel pit and there was no relation between that work and the work with the irrigating

machine. The question of payment for the irrigating work is mentioned, this would be entirely unnecessary if this work was an extension of the gravel pit work. The defendant did not direct the decedent to help with the irrigating as a part of the gravel pit work.

The court here has actually found that decedent and defendant entered into a new hiring agreement at the end of the working day at the gravel pit when decedent asked defendant if he wanted him to help and defendant said, "Yes." That agreements for work and labor may be informal and depend on the intention of the parties, see Erickson v. Erickson, 250 Iowa 491, 94 N.W.2d 728; Hitchcock v. Arctic Creamery Co., 170 Iowa 352, 150 N.W. 727; and Ganzhorn v. Reep, 234 Iowa 495, 12 N.W.2d 154; or that such may be more elaborate, see Pribyl v. Standard Electric Co., 246 Iowa 333, 67 N.W.2d 438.

The findings of the trial court are liberally and broadly construed to uphold the judgment, effect is given to what is implied as well as stated. Rank v. Kuhn, 236 Iowa 854, 856, 20 N.W.2d 72, and In re Estate of Evans, 228 Iowa 908, 918, 291 N.W. 460.

III. There was no dispute in the evidence concerning the actions and intentions of decedent and defendant at 5 p.m. on the day decedent was killed, but more than one inference could properly be drawn therefrom. This is a question for the trier of fact. As the record stood, the inference a new and separate employment contract was entered into at 5 p.m. is just as reasonable as that the irrigating work was an extension of the gravel pit work. Defendant did not undertake to explain the agreement. There was no prior course of dealing between the parties as in the Criger, Trullinger and Taverner cases, supra.

It should be pointed out that in these cases and Bennett v. Dickey, 20 Biennial Report, Workmen's Compensation Service 7 (1952), cited by defendant, the claimants were all engaged in only one occupation. It was not contended they were engaged in more than one, or had just entered into a second one. In the Bennett case, supra, the opinion of the deputy commissioner shows the employer had three businesses or occupations, an implement store in connection with which he did repair and service

work, a gas and oil business, and he operated a farm. The claimant was employed as a mechanic at the implement store, occasionally he operated a truck in the oil business. On the day of injury claimant was operating a corn picker at the farm. It was a used picker and had been giving trouble by breaking chains and claimant was operating it in an effort to locate and correct the mechanical defect. The deputy refused to follow the employer's argument that the claimant was excluded from coverage because of section 85.1(3), the same as contended by plaintiff here. The deputy held claimant was "in the course of his employment for the implement company at the time of his injury. * * * "

From the record made here, the evidence does not as a matter of law compel a finding decedent was in the course of his employment at the gravel pit. As pointed out, a different inference was not improper. Nor is this case similar to Trullinger v. Fremont County, 223 Iowa 677, 273 N.W. 124, where the claimant was hired to operate road machinery. When roadwork was slack he was directed by his superior to use the machinery in building trench silos. While so doing he was injured. He was properly awarded compensation. He was not engaged in agriculture. A man regularly employed on a farm and at the time of injury building a trench silo would not have been entitled to workmen's compensation. In the Trullinger case there was only one occupation of the claimant shown in the record, that of an operator of road machinery.

In the Crouse, Criger, Trullinger, Taverner, and Bennett cases, all supra, we find the employee was performing the work he was employed to perform at the time of injury. In the Crouse case, for example, the employer was both a farmer and processor. The claimant there was hired to work in processing, was so injured, and in fact did not do anything else. The claimant in the Taverner case was hired to do, and in fact did do, general farm work including working at the sorghum mill in the course of which he was injured. In this case the court found the work at the gravel pit had ceased. This is supported by the defendant's testimony. Also the defendant's testimony is that all decedent was originally hired to do was to work at the gravel pit.

From defendant's testimony it is a fair inference decedent had not at anytime done anything else but gravel pit work from the time he first went to work for defendant in April until 5 p.m. on the date of his death, and that defendant at no time intended decedent to do anything else. In fact from defendant's testimony it is a proper inference that he intended to do the irrigating with only the help of Mr. Rader until decedent offered to help.

Decedent was in the same position as he would have been if he offered to help and did help another farmer after 5 p.m.

The record here fairly shows decedent and defendant entered into a new and separate agreement for decedent to help with the irrigating. When so helping decedent was a person engaged in agriculture. It makes no difference whether he was so employed for ten minutes or ten years, once work was started pursuant to the new agreement he was so engaged.

Defendant's complaint the trial court applied the moment-of-injury rule comes about from the language necessarily used in separating the two businesses of the employer and in separating decedent's work up to 5 p.m. from his work after 5 p.m. Such language was not used in the sense of relating to the type of work or pursuit decedent was performing when injured without relation to his contract of employment as in Westdale Homes, Inc., v. Wiggins, 192 Md. 162, 63 A.2d 615.

The judgment of the trial court is correct and is hereby— Affirmed.

All JUSTICES concur.