**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 7, 2024**

# In the Court of Appeals of Georgia

A23A1263, A23A1264. HARCO NATIONAL INSURANCE COMPANY v. ERIC KNOWLES, INC. et al. (two cases).

DOYLE, Presiding Judge.

These related appeals arise out of a declaratory judgment action filed by Harco National Insurance Company against Eric Knowles, Inc. ("EKI"), Forestry Mutual Insurance Company (EKI's workers' compensation insurance carrier), Walter Knowles, and Robert Popwell. Harco brought the action seeking a judgment declaring that commercial general liability and auto insurance policies it issued to EKI did not cover liability for injuries suffered by Popwell at a job site while he was working for EKI in 2018. In Case No. A23A1263, Harco contends that the trial court erred by denying its motion for summary judgment (as amended) based on policy language excluding coverage for injuries to EKI employees "arising out of and in the course of

[their] employment" with EKI. In Case No. A23A1264, Harco contends that the trial court erred by failing to enforce an alleged settlement agreement in which EKI, Forestry, and Popwell purportedly agreed that Popwell's injuries arose out of and in the course of his employment with EKI. Because we conclude that the trial court erred by denying Harco's summary judgment motion in Case No. A23A1263, we reverse the judgment in that case; Case No. A23A1264 is dismissed as moot.

*Case No. A23A1263*

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

The undisputed record shows that in the spring of 2018, Popwell began working for EKI as a "cut down man" in a commercial logging operation. His job was to operate a machine called a feller buncher to cut trees in a controlled manner so that they could be loaded onto trucks. He reported to work when and where directed by

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

EKI, and he was paid every week based on the weight of the wood he cut. Walter Knowles was Popwell's supervisor.

With respect to the details of the accident, Popwell deposed that on May 3, 2018, he was working at a wooded job site along with Knowles and other personnel. Knowles determined the hours Popwell worked, which fluctuated depending on when they finished loading trailers with logs. According to Popwell's deposition, around mid-day, he stopped work to eat lunch. He got in his personal vehicle to drive to a nearby store that sold fried chicken, and as he was leaving the logging area on a dirt road, he soon noticed that Knowles was operating a skidder and pushing a loaded truck that needed extra traction to navigate the unpaved road. Popwell put his vehicle in park (facing the skidder) to wait for the operation to finish; when Knowles got the loaded truck moving sufficiently, he turned the skidder around and headed in Popwell's direction. As Popwell remained stationary in his vehicle, Knowles accidentally drove the skidder into and onto Popwell's vehicle, causing multiple injuries to him.

Popwell initially received workers' compensation payments from Forestry (EKI's carrier) for a few weeks, but thereafter, a dispute arose regarding workers'

compensation coverage, and Popwell sued EKI and Walter Knowles. To get clarity as to its coverage obligations, Harco filed the present action seeking: a declaration that Popwell was acting within the scope of his employment at the time he was injured, that his injuries are compensable under the Workers' Compensation Act ("the WCA"),[2] and that Harco's WCA exclusions in the policies issued to EKI preclude coverage.

During the pendency of Harco's suit, EKI and Forestry initially agreed that Popwell's injuries were compensable under the WCA and controlling precedent.[3] Harco moved for summary judgment as to this question, and EKI and Forestry did not initially oppose it.[4] But after an affidavit from Knowles emerged in related litigation,

---

[2] OCGA § 34-9-1 et seq.

[3] See generally *Frett v. State Farm Employee Workers' Compensation*, 309 Ga. 44 (844 SE2d 749) (2020) (overruling *Ocean Acc. & Guarantee Corp. v. Farr*, 180 Ga. 266 (178 SE 728) (1935) and holding that an injury occurred "in the course of" and arose "out of" employment when an employee slipped and fell in the break room during her lunch break).

[4] During this process, Harco amended its motion for summary judgment to remove any request for a declaration specifically ruling on Forestry's coverage obligations to Popwell. It maintained its request for rulings declaring that the WCA was Popwell's exclusive remedy, Harco had no duty to defend underlying claims brought by Popwell, and Harco's WCA policy exclusions precluded coverage for Popwell's claims against the insured.

EKI and Forestry changed course and opposed Harco's motion for summary judgment, relying on that affidavit. Knowles's August 2020 affidavit averred as follows:

> On May 8, 2018, I was employed as a crew leader by Eric Knowles, Inc. Robert Popwell was assigned to my crew and was under my supervision.
>
> On May 8, 2018, around noon, Robert Popwell and I ate lunch together in a service truck as I drove around the property where we were clearing timber.
>
> The drive lasted at least 15 minutes. During the drive, I instructed Robert Popwell on his assignment for the day. We looked at a GPS map together and discussed the location where he was to be working.
>
> I drove to the location where Robert Popwell was to be working and showed him exactly where he was to be.
>
> I then returned Robert Popwell to where his feller buncher was parked. He got out of my truck at that location. I instructed Robert Popwell to return to the area shown to him [and] to get that brow cut out because the other crew members would be completing their assigned tasks and would come to his area to gather the trees he was to cut.

I next saw Robert Popwell a few minutes later, after the skidder I was driving was in a collision with the vehicle he was driving.

Robert Popwell had abandoned his assigned task without my permission. Such an abandonment would normally result in termination of employment.

Following a hearing, the trial court denied Harco's amended summary judgment motion and granted a certificate of immediate review. This Court then granted Harco's application for interlocutory review.

1. Harco contends that the trial court should have granted its summary judgment motion because the record shows that Popwell's injury arose out of and in the course of his employment with EKI, so any liability was precluded by policy language excluding coverage for workplace injuries. We agree.

Harco's commercial general liability and automobile policies contain nearly identical language: "This insurance does not apply to: . . . 'bodily injury' to . . . [a]n 'employee' of the insured arising out of and in the course of . . . employment by the

insured."[5] The policies further explicitly exclude coverage for any obligation under workers' compensation law.

In the workplace injury context, Georgia case law is clear that general liability insurance contracts may, as was done here, exclude coverage for injuries sustained on the job that are covered by the WCA.[6] The question before us is whether there is a genuine issue of fact as to whether Popwell's injury was such an injury.

The Supreme Court of Georgia has clarified that even though eating lunch is not the actual work an employee is hired to do, an ordinary mid-day lunch break on the employer's premises is still considered to be "in the course of" employment for purposes of the WCA.[7] This is because eating lunch at the workplace is an activity

---

[5] On appeal, there is no genuine dispute that Popwell was an "employee" and that he suffered "bodily injury."

[6] See generally *Saxon v. Starr Indem. & Liability Co.*, 339 Ga. App. 495, 498 (2) (793 SE2d 659) (2016).

[7] See *Frett*, 309 Ga. at 48-49 (2) (a) ("When analyzing the 'in the course of' prerequisite, courts generally focus on the nature of the employee's activity at the time of the injury, not whether she was paid for it or was free to do something else."), disapproving of language in *Ocean Accident & Guarantee Corp.*, 180 Ga. at 270-271, stating that an employee's "preparation for lunch and his eating lunch was his individual affair. It was not a part of his employer's work."

incidental to work and "reasonably necessary to sustain [an employee's] comfort at work."[8]

Furthermore, eating lunch during a break on the premises, or traversing to and from the work area for lunch, is considered to be "arising out of" employment when

> the causative danger [is] incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service.[9]

Therefore, if an employee slips and falls on a wet surface, for example, when traversing into or out of an employee break room, "[i]t logically follows that her injury was causally connected to the conditions under which she worked, and her injury, therefore, 'arose out of' her employment."[10]

---

[8] *Frett*, 309 Ga. at 48 (2) (a).

[9] (Punctuation omitted.) *Frett*, 309 Ga. at 50, quoting *Thornton v. Hartford Acc. & Indem. Co.*, 198 Ga. 786, 792-793 (32 SE2d 816) (1945).

[10] *Frett*, 309 Ga. at 50.

8

Here, Popwell deposed that he was sitting in his vehicle in the process of leaving the job site to go to lunch when he was hit by the skidder driven by his supervisor during logging operations. Popwell had not yet left the logging area but was stopped and waiting for a stuck logging truck to be pushed along the roadway by the skidder. Thus, it is undisputed that Popwell's injury was caused by heavy equipment returning from a task that was part of the timber harvest operation. Further, on the date of the accident, the officer at the scene noted that Knowles stated he was unsure why Popwell was driving his private vehicle at the time of the collision. Knowles's subsequent affidavit does not dispute Popwell's assertions that he was in his truck at the job site as part of his lunch break, regardless of whether he had eaten something with Knowles already. Therefore, Knowles's assertion that Popwell had "abandoned" his assigned task at most shows that he did not immediately perform the task when

9

assigned. It does not change Popwell's legal status with respect to whether he had abandoned the course of his employment at the time of the accident.[11] He had not.[12]

Based on this record, even considering Knowles's affidavit, the undisputed evidence shows that at the time Knowles ran into Popwell's vehicle, Popwell was still in the logging area on his lunch break and was not otherwise engaged in a personal activity outside the course of his employment. The collision with a logging skidder at that time and in that location was a risk "reasonably incident" to Popwell's employment in the logging operation. Therefore, the injuries sustained by Popwell fell within the Harco policy exclusion for "'bodily injury' to . . . [a]n 'employee' of the insured arising out of and in the course of . . . employment by the insured," and the trial court erred by denying Harco's amended summary judgment motion.

2. Harco's remaining enumeration — challenging whether the Knowles affidavit is properly considered — is moot.

---

[11] See *Odom v. Franklin*, 368 Ga. App. 246, 249 (889 SE2d 405) (2023) (holding that an employee was still in the course of his employment and not on a personal detour even though he was violating company policy by being late to work). See also *Frett*, 309 Ga. at 49 (2) (a) (deciding that an employee on her lunch break in the break room was "in the course of" her employment was "not . . . a close case").

[12] There is no evidence, for example, that Popwell had been terminated or that he had quit his job.

3. Harco also challenges the trial court's denial of its motion to enforce an alleged agreement that Popwell's injury arose out of and in the course of his employment with EKI. In light of our holding in Case No. A23A1263, this case is dismissed as moot.

*Judgment reversed in Case No. A23A1263; Case No. A23A1264 dismissed. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*