DEEM v. KALAMAZOO PAPER CO.

MASTER AND SERVANT—INDUSTRIAL ACCIDENT BOARD—WORKMEN'S COMPENSATION—EVIDENCE—QUESTION OF FACT.

Where evidence, in a workmen's compensation case, had a tendency to show that decedent suffered a severe fall

and injury to his head, and later fell a second time and was killed, and the medical testimony was in conflict as to whether the death resulted from concussion of the brain caused by his prior injury, or from heart trouble, from which it was claimed he had previously suffered, the finding and award of the Industrial Accident Board rested on an issue of fact and should be affirmed.

Certiorari to the Industrial Accident Board. Submitted October 21, 1915. (Docket No. 160.) Decided December 22, 1915.

Lizzie G. Deem presented her claim for compensation for the death of her husband while employed by the Kalamazoo Paper Company. From the award entered the respondent brings certiorari. Affirmed.

*Alfred J. Mills,* for appellant.

*Charles H. Farrell,* for appellee.

BIRD, J. William W. Deem, husband of claimant, had been employed by the Kalamazoo Paper Company for nearly 20 years prior to his death. During that time he had been in reasonably good health, and had lost very little time. For several years prior to his death he had acted in the capacity of "beater" engineer. On the morning of June 29, 1914, he was engaged in renewing the screen on one of the "beater" cylinders. To accomplish this he stood on a plank placed across the top of the "beater" tub. The plank extended about 18 inches beyond the edge of the tub. During the temporary absence of his helper he slipped or made a misstep on the wet plank and fell to the cement floor, striking on his head and right shoulder. He was picked up in an unconscious condition .by the superintendent, but he regained consciousness soon after, and complained of being dizzy and of a pain in his right shoulder. His face was red and he tried to

vomit. Later he was assisted to a street car which carried him to his home. The family physician was called, and found him with a badly bruised head and shoulder. These were cared for by the doctor, and his recovery was rapid enough, so that on July 6th he returned to his work, and continued to work until his death. On the morning of July 16th he was seen to fall through the doorway leading from the "beater" room into the engine room. The engineer saw him, and went at once to his assistance, but found upon reaching him that he was dead.

A claim for compensation was filed with the Industrial Accident Board by his widow, alleging that deceased came to his death as a result of injuries received in a fall on June 29th. The matter received the attention of a board of arbitration, and she was given the statutory allowance of $3,000. An appeal to and reargument before the Industrial Accident Board resulted in an affirmance of the award. The claimant contended before the arbitration board that the deceased came to his death on July 16th as a result of concussion of the brain caused by his fall on June 29th. The claim was contested on the ground that death was caused by heart disease which had no connection with his injury, and, further, that the proofs left it to conjecture as to the cause of death.

It is obvious that the injury arose out of and in the course of deceased's employment, and, if his death was traceable to this injury, the award should be affirmed. To establish the fact that it was so traceable, claimant offered the testimony of Dr. Henwood, the family physician, who testified in part as follows:

"His death would be possible as the result of the blow he received on the 29th of June. From what I know of his condition, his physical condition on that morning when I examined him, I don't think there was anything else, as far as I know, that would prob-

189 Mich.—42.

ably cause that at that time. There was no organic trouble of any kind, to my knowledge. Assuming there may have been, it would be possible for it to have been accelerated by that injury, and death may have been hastened as a result of that injury."

He also testified that as a result of his examination and treatment it was his opinion that it was probable he died from the results of the blow, and that a period of two weeks was not an unusual time in which a concussion of the brain might produce its results.

Dr. Paul Butler, in answer to the hypothetical question as to the cause of death, answered that:

"Assuming for the purpose of this case that the facts are that he suffered from sleeplessness, loss of appetite, dizzy spells, I would say that he was suffering from concussion of the brain due to the original blow or injury of June 29th, or due to an injury, anyway."

And later this witness gave it as his opinion that death resulted from concussion caused by the injury.

Dr. Rush McNair, a witness for the respondent, admitted that from the description given by Dr. Henwood he "would judge there was some concussion."

As opposed to this, there was testimony which tended to show that the deceased had been troubled about three years prior to his death with a cardiac disturbance, and testimony was offered and received from which an inference might have been drawn that the deceased came to his death from that cause. The testimony of claimant, however, brought the question as to the cause of death into the domain of fact, and, as the Industrial Accident Board has passed upon the question of fact, and found that her claim was established, there is nothing left for us to do but to affirm the award.

Brooke, C. J., and Person, Kuhn, Stone, Ostrander, Moore, and Steere, JJ., concurred.