This is a review of an award of compensation in favor of Corwin R. Graves, a taxicab driver in the employ of the Yellow Cab Company. The facts are fairly stated in the findings of the Industrial Commission as follows:
"That on the 13th day of May, 1928, the applicant, Corwin R. Graves, pursued his duties as a taxi-cab driver for the said Yellow Cab Company and called at Rowland Hall early in the morning to pick up two passengers and haul them to the depot; upon his arrival at Rowland Hall he called for his passengers and carried two suit cases to the taxicab for his passengers, and while applicant descended the stairway with a suit case in each hand his heel caught on the edge of one of the stair steps causing him to lose his balance. That he swung around and fell down one or two steps, thus causing him to severely wrench his left leg in the region of the hip and socket joint, causing a weakening and injury to said leg; that he dropped the baggage and grabbed the stair rail in order to keep from falling down the stairs. That he sat down and rested for a moment and continued with his baggage to the taxi-cab; he then drove his passengers (finding the passengers seated in the taxi-cab) to the depot and retured to his employer's place of business, checked in and went to his home, suffering great pain. He reported the accident within a reasonable time; he reported back for work on the next regular shift and performed his duties as a taxi-cab driver, notwithstanding the fact that he was suffering great pain and discomfort; he was able to continue his employment by reason of the nature of his employment, that of taxi-cab driver.
"That by reason of the weakened condition of applicant's left leg, said weakness resulting from the severe injury and wrench sustained to said leg on May 13th, 1928, he fell down upon the sidewalk on the 16th day of May, 1928, while he was on his way to *Page 222 
work, between his home and the car line, and then and there fractured his left leg at the hip. The latter accident of the two was entirely due to the former injury of May 13th, 1928, by reason of the fact that the applicant was unable to bear his full weight on the said injured limb, this being the result of the weakened condition caused by the accident of May 13th, 1928. The injury of May 13th, 1928, caused the applicant to lose his balance, resulting in his falling on the sidewalk on May 16th, 1928, thus fracturing his left leg at or near the hip joint. The applicant, prior to May 13th, 1928, suffered no disability to his leg and was able to satisfactorily perform his regular work, and at no time prior to May 13th, 1928, did the applicant suffer any disability to his left leg that in any way interfered with his employment."
The conclusions from these facts, so far as necessary to state here, are:
"In view of the foregoing findings, the Commission concludes that the applicant herein named, on the 13th day of May, 1928, was injured by reason of an accident arising out of or in the course of his employment while regularly employed by the Yellow Cab Company, and that the injury sustained by him on the 16th day of May, 1928, was the direct result of the injury sustained on May 13th, 1928."
It is contended by petitioners "that the alleged accident to claimant on May 13, 1928, did not contribute to his injury on May 16th and that the decision of the Industrial Commission awarding him compensation rests entirely upon conjecture." An award cannot rest upon mere conjecture or possibility. 1, 2Bingham Mines Co. v. Allsop, 59 Utah 306, 203 P. 644. However, in reviewing a record every legitimate inference which can arise from the evidence must be drawn in favor of an employee where, as here, the commission has made findings and an award in his favor. There must be evidence, however, and not mere conjecture. Robertson v. State Ind. Acc. Comm., 114 Or. 394,235 P. 684.
The legal principles applicable to this case have been well stated in Workmen's Compensation Acts, a 3 Corpus Juris treatise, at page 70 as follows: *Page 223 
"In determining whether the physical harm sustained by the employee was the consequence of the accident or the injury, the controlling question is the continuity of the chain of causation and the absence of an intervening independent agency; the inquiry as to whether the result is the natural and probable one is immaterial."
The problem before us is to determine from the record whether there is sufficient competent evidence showing such a "continuity of the chain of causation" as that it might be said that the fracture of the bone on the 16th of May was caused or contributed to by the accident and resulting injury on 4 May 13th, and also showing "the absence of any intervening independent agency" causing such fracture. From a careful reading of the record, we are of the opinion that there is evidence to support the commission's findings and conclusions as to both propositions. That the employee was injured on May 13th while performing duties in the employ of the company is not disputed. It is well established by the evidence that he suffered pain and inconvenience, and continued to limp following such accident, notwithstanding he continued his work for the company. That the condition of his leg which caused pain and limping caused or contributed to the fracture of the bone on the 16th is shown by the evidence of the employee, a part of such evidence being as follows:
"Q. Then what happened? A. As I was walking down the sidewalk going to work I made a slight slip with my foot and this caused me to take the weight of my body entirely on this leg.
"Q. You mean the left leg. * * * When you fell on the 16th you were on the pavement or sidewalk? A. I was walking on the sidewalk, yes, and the hip joint gave way and came out while I was standing on my feet, causing a hot sensation to come over me, and I could not support myself.
"Q. And you went down? A. I went down, fracturing the bone.
"Q. In the hip? A. Yes. The injury of the 13th bothered me every step I took afterwards. * * *
"Q. You didn't stumble over anything on the 16th? A. No sir.
"Q. Just walking along. A. No sir, just walking along the sidewalk, and it was perfectly clear." *Page 224 
That a casual relationship existed between the injuries is also shown by the testimony of the medical expert, a part of whose testimony is as follows:
"Q. Would you say that the injury on May 13th had some bearing on the one of the 16th? A. Yes, very likely contributed to his inability to support himself, and prevent having an additional fall.
"Q. In other words, you think it was contributory? A. It probably contributed to his fall the second time.
"Q. By weakening the left leg? A. By the pain which he apparently sustained in supporting all his weight was too severe, assuming that history is correct, so severe that he actually fell and then sustained a fracture.
"Q. Did you have any conversation with the applicant regarding the injury on the 13th, how it affected him the day of the fall? A. Yes. He told me substantially the same story as is in the record."
After a careful search, we have been able to find only one case in the books where the facts are practically identical with the facts in this case. That is Hodgson v. Robins, 7 B.W.C.C. 232, decided by the Court of Appeal, England. In that case a charwoman in the employment of a firm of solicitors claimed compensation for an injury to her knee alleged to be due to slipping on the office stairs. On the morning of July 8th she alleged she was coming down stairs in the offices, and her leg gave way under her, bruising it. She did further work that day, but went home early. Next day she came to the office as usual, but limped, and said she felt pain in her leg. After returning home, she slipped on her own kitchen stairs, and found herself unable to move. She was taken to a hospital, where it was found that her kneecap was fractured, and an operation was performed. The master of the rolls, in deciding this case, said:
"The learned Judge has held that there is a sufficient connection between what took place on Tuesday at the office and what took place on Wednesday at her own house to justify him in concluding that the breaking of the knee-cap on the 9th was really a result of what took place on the 8th. I am bound to say that I think we could not set aside that finding, even though, on reading the evidence, we might be disposed to arrive at a different conclusion. So far as that goes, I think the present appeal fails. I think there was *Page 225 
evidence of an accident `arising out of and in the course of the employment,' resulting in the breaking of the knee-cap on the following day."
A recent case decided in this court illustrates the principles upon which this decision stands. In Gunnison Sugar Co. v.Industrial Commission (Utah) 275 P. 777, 779, the employee, who had been injured in the back in the course of his employment, had his teeth extracted unnecessarily through mistaken or negligent advice of a physician. This court, speaking through Mr. Justice STRAUP, held that this "cannot be said to be due to an independent and intervening cause but must be held attributable to the accident resulting in injury which as a primary cause set in motion a train of events from which the aggravated condition resulted."
The following cases, while not directly in point as to the facts are illustrative, and sustain the position taken by us.Head Drilling Co. v. Industrial Acc. Comm., 177 Cal. 194,170 P. 157, 16 N.C.C.A. 550; Reiss v. Northway M. M. Co.,201 Mich. 90, 166 N.W. 840; Deem v. Kalamazoo Paper Co.,189 Mich. 655, 155 N.W. 584; Cook v. Charles Hoertz Sons,198 Mich. 129, 164 N.W. 464; Colvin v. Emmons, 216 A.D. 577,215 N.Y.S. 562; Dunham v. Clare, [1912] 2 K.B. p. 292.
The award of the Industrial Commission is sustained.
CHERRY, C.J., and ELIAS HANSEN, J., concur.